## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **DIANNE BALLARD, WILLIE BALLARD, and SHANTRE JENNINGS,** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) Case No.: 1:14-CV-2487-VEH<br>) |
| **SHANE HOUSE, TONY HUBBARD, and TRENT ADAMS in their professional and individual capacities,** | )<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

## **MEMORANDUM OPINION**

### **I.    Introduction**

On December 30, 2014, Plaintiffs Dianne Ballard ("Ms. Ballard"), her husband, Willie Ballard ("Mr. Ballard"), and her daughter, Shantre Jennings ("Ms. Jennings"), initiated this civil rights lawsuit against three defendants sued in their official and individual capacities: Shane House ("Officer House), Tony Hubbard ("Officer Hubbard"), and Trent Adams ("Officer Adams"). (Doc. 1). Pending before the court are Officer Adams's Motion To Dismiss (Doc. 9) ("Adams's Motion") filed on March 31, 2015, Officer Hubbard's Motion To Dismiss (Doc. 12) ("Hubbard's Motion") filed on March 31, 2015, and Officer House's Motion To Dismiss (Doc. 13) (the

"House's Motion") filed on April 1, 2015.

Plaintiffs have not opposed any of these motions and, their deadline to do so under Appendix III to the court's Uniform Initial Order (Doc. 18) expired on April 14, 2015, and April 15, 2015, respectively. (*See* Doc. 18 at 23 ("The opponent's responsive brief shall be filed no later than fourteen (14) **calendar** days thereafter.") (emphasis in original)). For the reasons explained below, all three motions are due to be granted in part and otherwise termed as moot.

## II.   Standards

### A.   Rule 12(b)(6)

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain

statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of her entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

### B. Qualified Immunity

All defendants assert that qualified immunity bars Plaintiffs' § 1983 claims brought against them in their personal capacities. "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id*.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove

that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.

Until 2009, the Supreme Court required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law.[1] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L. Ed. 2d 271 (1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Anderson*, 483 U.S. at 639, 107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her

---

[1] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

6

conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991). Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable

competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

In determining whether the plaintiff meets this burden in the context of a motion to dismiss, this court is guided by the Eleventh Circuit's holding in *Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010), which clarifies that the so-called heightened pleading rule no longer applies to civil rights cases in which a qualified immunity defense is asserted:

> While *Swann*, *GJR*, and *Danley* reaffirm application of a heightened pleading standard for § 1983 cases involving defendants able to assert qualified immunity, <u>we agree with Randall that those cases were effectively overturned by the *Iqbal* court</u>. <u>Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*</u>. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief. . . .
>
> After *Iqbal* it is clear that there is no <u>"heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints</u>. All that remains is the Rule 9 heightened pleading standard.

*Randall*, 610 F.3d at 709-10 (emphasis added) (footnote omitted).

### C. Plaintiffs' Failure To Oppose

Plaintiffs' failure to file any opposition does not automatically mean that all

three motions are due to be granted. As explained by Judge Steele in *Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, *1 (S.D. Ala. Jan. 16, 2013):

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking*, 2013 WL 172903, *1 (footnotes omitted).

### III. Analysis

### General Ruling

Having studied Defendants' motions and Plaintiffs' pleading, the court concludes that Plaintiffs' claims, as presently pled, are all implausible because they are barred by the accrual of the applicable Alabama two-year statute of limitations

catchall provision, namely Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). Further, nothing in their complaint suggests that the court should consider tolling the accrual of Plaintiffs' claims.

As explained more specifically by Officer Adams in his brief, "Plaintiffs' federal and state law claims arise from alleged acts that occurred on October 20, 2012." (Doc. 10 at 7). However, "Plaintiffs did not file their Complaint with this Court until December 30, 2014." *Id.* Consequently, "so long as the statute of limitations began to accrue on October 20, 2012 [or even shortly thereafter], Plaintiffs filed their claims over two-months after the statute of limitations had expired." (*Id.* at 7-8).

Given the adequate and straightforward presentation of Defendants' collective position regarding untimeliness and Plaintiffs' corresponding silence, the court is under no obligation to construct and consider possible counter arguments in Plaintiffs' favor. *See Branch Banking*, *supra* at 9. The court addresses the untimeliness of each particular claim in greater detail below.

## **Specific Rulings**

**A.     Plaintiffs' § 1983 Federal Claims**

Concerning Plaintiffs' § 1983 claims generally:

> In § 1983 actions, the statute of limitations is taken from a state's statute of limitation for personal-injury tort actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). <u>In Alabama, that statute of limitations is two years</u>. *Holt v. Valls*, 395 F. App'x 604, 606 (11th Cir. 2010) (citing Ala. Code § 6-2-38). . . .
>
> While § 1983 claims barrow the statute of limitations from the forum state, when the statute of limitation begins to accrue is a matter of federal law. *Wallace*, 549 U.S. 384, 388 (2007) (stating "the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law"). Under federal law, the statute of limitations begins to accrue "when the plaintiff has a complete and present cause of action." *Wallace*, 549 U.S. at 388. The Eleventh Circuit has stated that "[t]<u>he statute of limitations on a section 1983 claim begins to run when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights</u>." *Van Poyck v. McCollum*, 646 F.3d 865, 867 (11th Cir. 2011).

(Doc. 10 at 7, 8 (emphasis added)).

Under this *Wallace*/*Van Poyck* framework, Plaintiffs should have reasonably been aware that they had a valid § 1983 excessive force claim against Defendants at the time in which the challenged force was used against them–October 20, 2012. Therefore, with an accrual date of October 20, 2012, October 20, 2014, was the latest date on which Plaintiffs could have timely filed their excessive force claim (absent

11

any tolling, which has not been alleged here). *See, e.g., Curtis v. Gordon Police Dep't*, No. Civ. A. 504CV281WDO, 2005 WL 3262960, at *1 (M.D. Ga. Dec. 1, 2005) ("Accordingly, absent any cause for tolling, the limitations period for Plaintiff's claims commenced on August 26, 1999 [*i.e.*, the day on which the force was used] and expired on August 26, 2001.").

As for Plaintiffs' unlawful arrest/false imprisonment count, "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. To the extent that Plaintiffs were detained by legal process on October 20, 2012, this means that their federal false arrest claim accrued on October 20, 2014. *See, e.g., Ferguson v. City of Jasper*, No. 5:13–CV–1678–AKK–JEO, 2014 WL 4957218, at *7 (N.D. Ala. 2014) ("Plaintiff's cause of action against the defendants for unlawful arrest accrued on June 20, 2008, the day he was arrested; he therefore had until June 20, 2010, to file a § 1983 action.").

Alternatively, the accrual of Plaintiffs' false imprisonment claim is tied to the date on which any of their arrest warrant(s) were signed by the magistrate. *See Ferguson*, 2014 WL 4957218, at *7 ("His cause of action against the defendants for false imprisonment accrued on June 23, 2008, <u>the day the magistrate signed the arrest</u>

warrant; he therefore had until June 23, 2010, to file a § 1983 action." (emphasis added)).

Relying upon *Burgest v. McAfee*, 264 F. App'x 850, 852 (11th Cir. 2008) as persuasive authority, Officer Adams argues that:

> Plaintiffs' claim[] [for false imprisonment] [is] ripe for dismissal as a matter of law. In *Burgest*, the Eleventh Circuit, in upholding a district court's grant of a motion to dismiss a false arrest claim, "assumed" the court in the underlying state criminal proceeding properly applied Florida law requiring that "every arrested person shall be taken before a judicial officer . . . within 24 hours of arrest." *Burgest*, 264 F. App'x at 852 (citing Fla. R. Crim. P. 3.130(a)). "[W]e assume that Burgest received an initial appearance on November 13, 1998, at which point his complaint for false imprisonment accrued. When this 'legal process was initiated against him,' the period of limitation began 'to run.'" *Id.* (citing see *Wallace*, 549 U.S. at 389).
>
> The State Alabama, similar to the State of Florida, has a statute requiring that arrestees receive process shortly, within forty-eight hours, after their arrest. *See* Ala. R. Crim. P. 4.3(a)(1)(iii). Specifically, the statute states that following a warrantless arrest, an arrestee:
>
>> [s]hall be afforded an opportunity to make bail in accordance with Rules 4.3(b) and 4.4. A judge or magistrate in the county of arrest shall determine whether probable cause exists to believe that the defendant committed the charged offense. . . . If *a probable cause determination is not made by a judge or magistrate without undue delay, and in any event <u>later than forty-eight (48) hours after arrest</u>, then . . . the person should be released upon execution of an appearance bond set in the amount of minimum bond*.
>
> Ala. R. Crim. P. 4.3(a)(1)(iii) (emphasis added). Applying Alabama law,

13

> <u>Plaintiffs [by way of the *Burgest* assumption] appeared before a judge or magistrate within 2-days after their arrests on October 20, 2012, causing their false imprisonment claims to begin accruing on October 22, 2012</u>. Plaintiffs filed their Complaint December 30, 2014, (Doc. 1), which was over two months after the statute of limitations had expired.

(Doc. 10 at 11-12 (emphasis by underlining added)).

This court is persuaded to follow *Burgest* and agrees with Officer Adams that Plaintiffs' false imprisonment claim, by operation of Alabama's warrantless arrest procedures, began to accrue on Monday, October 22, 2012, *i.e.*, within 48 hours of Saturday, October 20, 2012, <u>at the latest</u>. As a result, Plaintiffs' complaint should have been filed no later than October 22, 2014, in order to preserve that particular federal cause of action.

Therefore, consistent with the above analysis, all of Plaintiffs' § 1983 claims are implausibly pled and due to be dismissed because they are, from the face of Plaintiffs' complaint, time-barred by the accrued application of § 6-2-38(l).

### B.   Plaintiffs' Alabama Assault and Battery Claim

As Officer Adams explains the untimeliness of Plaintiffs' assault and battery claim:

> In Alabama, a cause of action "accrues" when the actual damage or injury is sustained. *Ex parte Stonebrook Development, L.L.C.*, 854 So. 2d 584, 588-89 (Ala. 2003); *Choice Builders, Inc. v. Complete Landscape Service, Inc.*, 955 So. 2d 437, 441 (Ala. Civ. App. 2006). In other words, a cause of action accrues as soon as a party is entitled to

maintain an action. *Booker v. United American Ins. Co.*, 700 So. 2d 1333, 1339 (Ala. 1997). Additionally, there is no "discovery rule" under which the cause of action does not accrue until the injury or damage is discovered. *Boyce v. Cassese*, 941 So. 2d 932, 946 (Ala. 2006) (Alabama has no "discovery rule" with respect to negligence or wantonness actions that would toll the running of the limitations period). Thus, Plaintiffs' state law claim for assault and battery is barred by the statute of limitations.

(Doc. 10 at 9-10).

The court concurs with this analysis and finds that Plaintiffs' assault and battery claim is implausibly pled because it was not filed on or before October 20, 2014. *See Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) ("Mrs. Wright provided no evidence of an assault or a battery committed against her by Mr. Wright since 1981, and an action based on such torts occurring that far back is barred by the statute of limitations." (citing Ala. Code § 6-2-38(l))).

Once again, nothing alleged in Plaintiffs' complaint suggests that tolling the applicable statute of limitations for assault and battery is appropriate in this instance. Therefore, consistent with the above analysis, Plaintiffs' assault and battery claim is also due to be dismissed as untimely and implausible by the accrued application of § 6-2-38(l).

## IV. Conclusion

In sum, Adams's Motion, Hubbard's Motion, and Houses's Motion are due to

15

be granted on the basis that Plaintiffs' claims are all untimely and implausibly alleged from a statute of limitations standpoint. The court does not reach the other grounds offered in support of dismissal, including qualified immunity, state agent immunity, scope of official capacity relief, and the inappropriate shotgun characteristics of Plaintiffs' complaint. Consequently, those unaddressed portions of the three motions are due to be termed as moot. Finally, the court will enter a final judgment order dismissing Plaintiffs' case with prejudice.

**DONE** and **ORDERED** this the 22nd day of April, 2015.

/s/ VEHopkins

**VIRGINIA EMERSON HOPKINS**
United States District Judge